NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0509n.06

No. 12-4062

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*May 22, 2013*

DEBORAH S. HUNT, Clerk

KARRIE KIRKLAND,

    Plaintiff-Appellant,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF
OHIO

Before: ROGERS and KETHLEDGE, Circuit Judges; and BORMAN, District Judge.[*]

KETHLEDGE, Circuit Judge. Karrie Kirkland appeals the district court's decision to affirm an administrative law judge's denial of Kirkland's application for social-security disability benefits. We affirm.

Kirkland worked as a nurses' aide for approximately twenty years, stopping in February 2002 when she developed osteoarthritis in her left knee. She filed an application for disability benefits shortly thereafter. An ALJ found that Kirkland's osteoarthritis was disabling, but also found that Kirkland had undergone surgery that "allow[ed] her to return to substantial gainful activity as of April 19, 2005." The ALJ thus granted benefits to Kirkland for a closed period that ran from February 2002 to April 2005.

---

[*]The Honorable Paul D. Borman, United States District Judge for the Eastern District of Michigan, sitting by designation.

Kirkland later filed a second application for disability benefits for a period that began in June 2005. In that application, Kirkland alleged that her left knee had developed reflex sympathetic dystrophy syndrome, which is a "chronic pain syndrome" that causes "persistent, burning, aching or searing pain[.]" Soc. Sec. Ruling No. 03-2p, 2003 WL 22399117. Kirkland said that she could sit or stand for only twenty minutes at a time because of the pain, and that, approximately twice per week, she would fall because her knee gave out. Kirkland also alleged that she had rheumatoid arthritis in both of her hands.

A different ALJ considered Kirkland's second application. The ALJ initially determined that Kirkland suffered from "disorders of the lower extremity, reflex sympathy dystrophy, and affective disorders[,]" all of which qualified as severe impairments under 20 C.F.R. § 404.1521. The ALJ also determined that Kirkland suffered from carpal tunnel syndrome; which did not qualify as a severe impairment because "there [was] no evidence that [it] lasted, or was expected to last, for 12 months[.]" *See* 42 U.S.C. § 423(d)(1)(A). The ALJ then held that Kirkland was not disabled because she could perform "simple" sedentary work, provided that she could alternate between sitting and standing. In reaching this conclusion, the ALJ cited Kirkland's lack of credibility and several physicians' opinions. Based on these findings, the ALJ rejected Kirkland's request for disability benefits.

The Appeals Council denied review of the ALJ's decision. Kirkland then sought review in federal court. The parties consented to trial before a magistrate judge, who affirmed the ALJ's decision. This appeal followed.

We review only whether the ALJ applied the correct legal standard and made findings supported by substantial evidence in the record. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013). Substantial evidence is evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.*

Kirkland's primary argument on appeal is that the ALJ improperly discredited Kirkland's testimony "solely" because "her statements were not supported by the objective medical evidence." Appellant's Br. at 24–25. It is true that an ALJ may not "reject [an individual's] statements about the intensity and persistence of [her] pain . . . solely because the available objective medical evidence does not substantiate [those] statements." 20 C.F.R. § 404.1529(c)(2). But the ALJ did not base the credibility finding solely on a lack of objective medical evidence; rather, the ALJ considered medical opinions as well. Specifically, the ALJ cited the findings of Dr. Issam Al-Turk, who examined Kirkland in January 2007. Dr. Al-Turk found that Kirkland "would have difficulty in performing work related activities that demand prolonged walking[,]" but that "[s]itting, standing, lifting, carrying, handling objects, hearing, speaking, and traveling are not affected." The ALJ also considered the findings of two agency physicians—Dr. Dimitri Teague and Dr. Paul Morton—who each concluded that Kirkland could perform light work. These medical opinions, plus the lack of objective medical evidence, provide substantial evidence for the ALJ's credibility finding. *See* 20 C.F.R. § 404.1529(c)(1).

Kirkland also argues that the ALJ erred in finding that Kirkland's carpal tunnel syndrome was a non-severe impairment. But any error along these lines would be harmless. Before an ALJ can find that an individual is disabled, the ALJ must find that the individual has a "severe"

impairment. *See* 20 C.F.R. § 404.1520(a)(4)(ii). If the individual has at least one severe impairment, the ALJ will then assess how much work the individual can still do. *See id.* § 404.1520(a)(4)(iv). When making that assessment, "the ALJ must consider limitations and restrictions imposed by all of [the] individual's impairments, even those that are not severe." *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) (internal quotation marks omitted); *see also* 20 C.F.R. § 404.1523. Thus, so long as the ALJ considers all of the individual's impairments, the "failure to find additional severe impairments . . . does not constitute reversible error." *Fisk*, 253 F. App'x at 583 (brackets and internal quotation marks omitted).

Here, the ALJ expressly considered Kirkland's carpal tunnel syndrome when assessing her ability to work. In particular, the ALJ concluded that Kirkland "should avoid extensive lifting and carrying to prevent further aggravation of her alleged carpal tunnel syndrome." Thus, the ALJ's failure to classify Kirkland's carpal tunnel syndrome as a "severe" impairment cannot be reversible error. *See id.*

Finally, Kirkland argues that the ALJ erred in finding that Kirkland could perform sedentary work despite her carpal tunnel syndrome. But Dr. Al-Turk concluded that Kirkland's carpal tunnel did not affect her ability to "lift[], carry[], [or] handl[e] objects[.]" Moreover, Dr. Al-Turk found that Kirkland's ability to grasp, manipulate, pinch, and perform fine-motor tasks was "normal." Substantial evidence therefore supports this finding as well.

The district court's judgment is affirmed.